BEN LEWIS v. STATE.

177 So. 205.
Division B.
Opinion Filed October 20, 1937.
Rehearing Denied December 7, 1937.

*Clyde R. Brown,* for Plaintiff in Error;

*Cary D. Landis,* Attorney General, *Roy Campbell,* Assistant Attorney General, and *John H. Carter, Jr.,* State Attorney, for the State.

CHAPMAN, J.—The parties to this cause will be referred to in this opinion as they appeared in the court below as State and defendant. Defendant at the Fall Term, 1936, of the Circuit Court of Holmes County was indicted for the murder of J. W. Arrant on the second day of May,

1936, at his home near Hickory Hill church in Holmes County. He was duly arraigned, filed a plea of not guilty and placed upon trial and was by a jury of Holmes County convicted of murder in the second degree. He was by the Court sentenced to serve a period of his natural life in the State Prison. His motion for a new trial was by the lower court denied, he was adjudged insolvent, sued out writ of error, perfected his bill of exceptions and in this court seeks a reversal of the judgment entered against him upon the single assignment that the lower court erred in overruling and denying defendant's motion for a new trial.

The deceased, his wife, and two step-daughters, Rose and Agnes Levins, on Saturday evening attended church services at Hickory Hill church about one mile from their home when defendant was an attendant and engaged in conversation with deceased's step-daughter, Rose Levins. It appears that Rose and Agnes were young ladies and the defendant was interested in Rose whom he later married. Deceased requested Rose and her sister Agnes to go on the inside of the church and attend the services and not talk on the church yard, which request was immediately complied with on the part of the girls. The church services lasted about one and one-half or two hours and when over defendant accompanied Rose, Agnes and their mother home when the deceased again insisted that the young people come in the house to talk and not remain in the yard, which all agreed to. The deceased was about 62 or 63 years of age and liked rum and asked defendant to drink with him. It seems that the deceased and defendant, after having a drink or so, decided to have a fist fight, but for some reason it was called off. When defendant was about to leave he called to Rose to come out as he wanted to say something to her before leaving and this apparently increased the

anger of deceased, coupled with the influence of his liquor, caused him to come out in the yard where defendant and Rose were and state that he (deceased) "had nothing to say to Rose,"—one word caused another when the deceased and defendant ran together with knives. The deceased had his throat cut, with some wounds on the back and immediately died. The defendant came out of the fight in so far as this record shows, without a mark.

It is insisted here that from the evidence adduced that the jury was not justified in finding the defendant guilty of an offense higher than manslaughter. While there appears in this record substantial grounds for such a contention, it cannot be overlooked that it was a jury question. There can be no question about the right of the defendant to talk to Rose Levins and the step-father had no supervisory authority over the conduct of these young people, in the absence of improprieties, which never occurred according to the record. Likewise it appears that the more liquor the deceased drank the more quarrelsome, faultfinding and domineering he became. If the parties had been free from the influence of liquor the unfortunate occurrence in all probability would never have occurred. The defendant here also drank, and his coat was cut or appeared cut shortly after the fatal encounter but all these facts were submitted to the jury with proper instructions by the court on the law of the case.

The lower court was liberal to the defendant in his effort to do justice herein by giving instructions to the jury as requested by defendant's counsel. The evidence fully sustains the verdict of the jury. In the case of Settles v. State, 75 Fla. 296, text p. 299, 78 Sou. Rep. 287, this Court said:

"A judgment of conviction will not be reversed on writ of error even if technical errors were committed in rulings

on the admissibility of evidence or in charges given or refused or in other matters of procedure, where the evidence of guilt is clear and ample and no fundamental rights of the defendants were violated, and it appears from the whole record that such technical errors, if any, were not prejudicial to the defendant. Seymour v. State, 66 Fla. 133, 63 South. Rep. 7."

There appears here no reversible error and as substantial justice was awarded in the court below the judgment appealed from is hereby affirmed.

WHITFIELD, TERRELL and BUFORD, J. J., concur.

ELLIS, C. J., and BROWN, J., dissent.

BROWN, J. (dissenting).—The evidence in this case is not sufficient, as I see it, to prove any higher degree of homicide than manslaughter. The deceased was the aggressor and was evidently determined to kill defendant. Both men were drinking, though the deceased had drunk more heavily than the defendant. The attack on the defendant was not justified. The attack was made with a knife and defended by the defendant wtih a knife. The defendant had the right to defend himself. If in the heat of the combat he happened to inflict a fatal blow, it would be either justifiable, in self defense, or at most, manslaughter. See Disney v. State, 72 Fla. 492, 73 So. 598.

ELLIS, C. J., concurs.